UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

S.M.N ISLAM, ON BEHALF OF HIMSELF AND
HIS DAUGHTER S.I.

VERIFIED COMPLAINT

-AGAINST-

Date Purchased:

POLICE OFFICER ANDREW TIRELLI (TAX REG# 969393),
SGT RODRIGUEZ, OFFICER JOHN DOES 1-4
AND THE CITY OF NEW YORK

Plaintiff S M N Islam, through his attorney Tamara Harris, complains and alleges as follows:

THE PARTIES

1. The plaintiff SMN Islam resides at 87-82 160 Street, Jamaica NY 11432.

2. The defendant Police Officer Andrew Tirelli (Tax Reg. #969393) works out of the 114 precinct, located at 34-16 Astoria Blvd., Astoria New York 11103.

3. Sgt. Rodriguez works out of the 114 precinct, located at 34-16 Astoria Blvd., Astoria, New York 11103, as does Officer John Doe.

4. The City of New York is located at 100 Church Street, New York, New York.

JURISDICTION

5. This Court has federal question jurisdiction under 28 USC 1331.

FIRST CAUSE OF ACTION- FALSE ARREST AND MALICIOUS
PROSECUTION UNDER 42 USC SECTION 1983

6. Plaintiff's thirteen year old daughter was reported missing by her father, S M N Islam, pursuant to missing person reports filed with the 48 precinct under report numbers 2020-48-8533/6730/5482.

7. Flyers were circulated and posted by the Detectives at Manhattan South, with the missing person case number of 2020-7541 assigned, a picture of plaintiff's daughter, her name and a clear description of the last thing the child was seen wearing.

8. The NYPD Complaint number was also listed on the missing person flyer.

9. The child had been reported missing by plaintiff and his wife, and had been missing for over one month.

10. Plaintiff later learned the child was staying with and having sexual relations with a 21 year old man, named Justin Paul.

11. Plaintiffs reported this information to the police, since this missing person case also involved statutory rape of a 13 year old child.

12. S.I. contacted her mother after being missing for over one month and agreed to meet.

13. S.I.'s mother informed her husband, plaintiff, of the scheduled meeting with S.I.

14. Plaintiff immediately contacted the caseworker from ACS who had been involved with the missing person case.

15. The case worker instructed plaintiff to go to the police and request assistance at the location of the scheduled meet, for he was concerned the child may try to run away again or become combative if he tried to restrain her- which would cause her to go missing again.

16. To avoid the child running away and going missing again, plaintiff complied with ACS's instructions and went to the 114 precinct to request police accompany him to the meeting spot where his daughter was expected to meet his wife, and explained he was concerned she would run away again to live with the adult male she was sleeping with.

17. On September 17, 2020 the officers at the NYPD precinct advised plaintiff to go directly to the location and call 911, and they would meet him there to assist him with retrieving his missing daughter.

18. Plaintiff went to the location and called 911 several times, doing exactly as he was instructed to do by the 114 precinct.

19. However, the police delayed in responding to his call, and his daughter appeared at the location to meet her mother.

20. However, the daughter then decided to flee, and police still had not responded to plaintiff's 911 call.

21. Plaintiff held onto his daughter's clothing with his wife and demanded she stay, in an effort to prevent her from running away again.

22. When police arrived, they escorted S.I. onto an ambulance.

23. The child was unharmed and had absolutely no bruises whatsoever, and did not report her father had engaged in any misconduct.

24. The responding officer was Officer Tirelli and his superior was Sgt. Rodriguez of the 114 precinct.

25. Plaintiff was shocked when Officer Tirelli and Sgt. Rodriguez authorized the 21 year old man who had been having sex with plaintiff's 13 year old daughter to enter the ambulance to accompany his child (the subject of a missing person report), while he was excluded.

26. Plaintiff advised defendants that his daughter was a missing person, there was an open case, and the man they just let on the ambulance was engaged in sexual relations with his minor child.

27. The police ignored and disregarded this information.

28. Thereafter, the defendants arrested the plaintiff, charging him with endangering the welfare of a child and harassment in the second degree- without even interviewing his daughter or looking up the case history.

29. Plaintiff immediately began to get chest pains and suffered a cardiac incident, requiring hospitalization as a result of his baseless arrest.

30. Plaintiff was incarcerated pending arraignment and was the subject of an order of protection barring him from having any contact with his daughter, who was again a missing person because of the police's refusal to listen to the information plaintiff told them.

31. In fact, S.I. ran away again after being transported to the hospital by ambulance.

32. Plaintiff had committed absolutely no crime and had literally complied with instructions he received from the ACS case worker to go to the 114 precinct, and officers at the 114 precinct, who claimed they would meet him at the location to assist him in restraining his daughter once he arrived and dialed 911.

33. Moreover, if defendants simply ran the name of the child in their database they would have confirmed she was the subject of an open missing person report, that the plaintiff was the one who reported it, and that plaintiff had done nothing wrong in trying to keep his daughter at the location until the police arrived, especially when it was the police at the 114 precinct that failed to timely respond to his call (after he had walked into that very precinct).

34. The NYPD at all times had a documented missing person case in their system and were on notice, that if they located S.I., she was wanted by her parents as a missing person.

35. Even ACS contacted defendants and the 114 precinct to notify them that the child was a missing person, that they had instructed the father to seek police intervention to prevent the child from becoming combative or running away again (which was anticipated), and that plaintiff's actions to restrain his daughter from running away again (when police failed to show up in a timely fashion) were exactly what he needed to do to prevent the child from running away again- back to Justin Paul who was statutorily raping her.

36. Defendants arrested plaintiff without any justification or probable cause for endangering the welfare of a child and harassment.

37. If anything, plaintiff was trying to save his daughter from becoming a missing person yet again, and from continuing to live with a 21 year man that was having illegal sexual relations with a minor.

38. After defendants handcuffed and arrested plaintiff, causing him to endure a cardiac event that required hospitalization, they transported plaintiff's daughter to the hospital.

39. However, the child ran away again- as a result of defendants actions in arresting her father, instead of returning the missing child to her parent's care.

40. No objectively reasonable officer or sergeant would have found probable cause to arrest plaintiff based on these facts.

41. These defendants acted maliciously in disregarding evidence that they had a missing person in their grasp, ignoring plaintiff's pleas to check their database and the Detective squad for confirmation that S.I. was the subject of an open missing person case, ignored plaintiff's request that they confer ACS, and in allowing the very subject of plaintiff's statutory rape complaint access to his daughter inside the ambulance.

42. The epitome of this malice was when they arrested plaintiff.

43. Defendant were state actors, acting under color of state law, whose actions were not objectively reasonable.

44. It was not objectively reasonable under these circumstances for defendants to arrest and charge plaintiff with harassment and endangering the welfare of a child based on allegations he engaged in a verbal dispute with his missing daughter and held the collar of her jacket to prevent her from leaving the location.

45. Any objectively reasonable officer or sergeant would know there is no criminality in a father trying to restrain his daughter, a documented missing person with the NYPD and ACS, from running away again, by grabbing her coat.

46. Similarly, any objectively reasonable officer would have refused to allow a grown man, who was alleged to have been having sex with 13 year old child (that was the subject of a missing person report), from entering the ambulance with her (while excluding her father)

47. Defendant's arrest of plaintiff was without any probable cause and was patently unreasonable under the circumstances, as was the issuance of a limited order of protection against plaintiff.

48. The criminal case against plaintiff was ultimately dismissed in the criminal court on February 21, 2021.

49. For the foregoing reasons, defendants have engaged in false arrest and malicious prosecution, for arresting and prosecuting plaintiff without probable cause; intentionally and maliciously falsifying evidence to justify the unreasonable seizure and prosecution of plaintiff; and engaging in objectively unreasonable conduct.

50. Defendants actions violated the 4th amendment and 14th amendment of the United States Constitution, as it was a violation of plaintiff's right to be free from unreasonable seizures and right to be free from restrains on his liberty.

51. Defendants commenced a criminal proceeding against the plaintiff based on absurd and charged of purported criminality, for conduct that did not amount to any criminality..

52. That criminal prosecution terminated in plaintiff's favor on February 21, 2021.

53. There was no probable cause for the criminal proceeding and defendant's conduct exemplified actual malice.

54. Defendants proximately caused plaintiff to suffer injuries, such as emotional pain, stress, anguish, anxiety, chest pains resulting in an abnormal ECG, dizziness, and other physical symptoms.

55. Plaintiff also suffered the loss of his TLC license as a result of his arrest and was unable to work, thereby enduring lost wages.

56. Plaintiff seeks $10 million dollars in emotional damages, $10 million in punitive damages and $50,000 compensatory damages.

### SECOND CAUSE OF ACTION- RELIGIOUS DISCRIMINATION UNDER 42 USC SECTION 1983 AGAINST OFFICER JOHN DOE

57. Plaintiff repeats and realleges the aforementioned allegations.

58. Plaintiff is a Muslim, and is an imam and khatib in the mosque.

59. Plaintiff is a leading religious figure in his mosque and always dresses in religious garb, in accordance with his Muslim faith.

60. When defendants Tirelli and Rodriguez arrived at the scene they mocked plaintiff because of his muslim garb.

61. This discriminatory animus was reflected in the way they then baselessly arrested plaintiff, who had not violated any criminal law and had, in fact, sought police and ACS intervention to prevent his missing child (documented as missing with the NYPD) from running away again when police failed to timely respond.

62. When plaintiff suffered a cardiac event that required him to be transported to the hospital, defendant Officer John Doe treated plaintiff like an animal, by both handcuffing him and shackling his feet.

63. This handcuffing and shackling of the feet continued while he was being treated in the hospital, as if he was a wanted murderer.

64. Plaintiff requested Officer John Doe to allow him to pray and conduct ablution, in accordance with his religion.

65. To conduct ablution, plaintiff needed his feet to be unshackled so that he could wash them.

66. Plaintiff was not a threat to anyone while hospitalized with a cardiac event, especially since one of his arms was handcuffed to the bed.

67. Officer John Doe, however, refused to unshackle plaintiff's feet to allow him to wash his feet and conduct ablution.

68. Defendants actions in arresting plaintiff on baseless charges and then shackling his feet while hospitalized (and while he was also handcuffed), and refusing to allow him to conduct ablution were a result of discriminatory animus and violative of the 1st, 4th and 14th amendment.

69. Defendants actions were not objectively reasonable, and plaintiff filed notice of claim..

70. Plaintiff seeks $10 million emotional damages, $10 million in punitive damages and $50,000 compensatory damages.

## THIRD CAUSE OF ACTION: NEGLIGENCE AGAINST JOHN DOE 2 AND 3, ASSERTED BY PLAINTIFF ON BEHALF OF HIS MINOR DAUGHTER

71. On or about October 11, 2020 plaintiff again reported to police that his 13 year old daughter was having a sexual relationship with an adult male named Justin Paul (Rayden), which was statutory rape.

72. Plaintiff called 911 to make a report and then spoke to a supervisor requesting to make a report.

73. Thereafter, police (John Doe 2 and 3) came to plaintiff's home and advised him they could not take a report about the statutory rape of his 13 year old daughter by adult Justin Paul.

74. John Does 2 and 3 even ignored the existence of love letters with sexual connotations, written and signed by Justin Paul to plaintiff's 13 year old daughter.

75. On or about October 12, 2020 plaintiff received a call that police had plaintiff's daughter and she was in the company of Justin Paul.

76. Plaintiff went with his wife to retrieve his daughter, but learned the police (John Doe 4 and 5) had released Justin Paul.

77. Plaintiff made multiple complaints to the police about these issues, but the police refused to intervene.

78. Justin Paul, a 21 year old male, continues to have sexual relations with plaintiff's daughter because Officers John Doe 1 and 2 refused to take a report; and John Does 3-4

released Justin Paul when they located plaintiff's 13 year old daughter in that 21 year old man's company.

79. John Doe's 2-4 have condoned and facilitated the statutory rape of a minor by refusing to take so much as a report documenting the allegations and by releasing Justin Paul when they found plaintiff's child in his company.

80. John Does 2-4 had a duty to serve and protect members of the public, especially children like plaintiff's daughter.

81. Said defendants breached that duty and caused injury to plaintiff's daughter; to wit, the continuation of Justin Paul's statutory rape of a child.

82. Plaintiff seeks damages, on behalf of his daughter, in the amount of $10 million emotional damages and $10 million punitive damages.

83. Plaintiff demands trial by jury.

Dated: February 2, 2022

TAMARA HARRIS, ESQ

VERIFICATION

## VERIFICATION

Plaintiff deposes and swears he has read the foregoing complaint and it is true to the best of his knowledge.

_____
SMN ISLAM

SWORN TO BEFORE ME THIS DAY OF 9th

FEBRUARY 2022

_____
NOTARY PUBLIC

LINDA K PRASAD
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01PR6131145
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES AUG 1, 2025